UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SAMAAD BISHOP, *in propria persona*,

                    Plaintiff,

          v.

BEST BUY, CO. INC., (FICT) BEST BUY CO. OF
MINNESOTA, PETER TROUPAS, in his individual
and official capacity as General Manager of Best Buy,
1280 Lexington Avenue, NY, NY 10028, RICARDO
QUILES, in his individual and official capacity as
LPT of Best Buy, 1280 Lexington Avenue, NY,
NY 10028, BRIAN PLACEK, in his individual
and official capacity as Sales Manager of Best Buy,
1280 Lexington Avenue, NY, NY 10028, BRIAN
LEGISTER, in his individual and official capacity as
Sales Manager of Best Buy, 1280 Lexington Avenue,
NY, NY 10028, CARL LARSEN in his individual
and official capacity as LP Team Leader of Best Buy,
1280 Lexington Avenue, NY, NY 10028, THE CITY
OF NEW YORK, SERGEANT GREEN, in her
individual and official capacities of the 19th Precinct
of the New York City Police Department, POLICE
OFFICER GREEN, in her individual and official
capacities of the 19th Precinct of the New York City
Police Department, POLICE OFFICER MORALES,
in her individual and official capacities of the 19th
Precinct of the New York City Police Department, and
Unknown Police Officers of the City of New York
Police Department, whose names are unknown at
this time,

                    Defendants.

---

08 Civ. 8427 (LBS)

**MEMORANDUM
& ORDER**

SAND, J.

          Plaintiff Samaad Bishop brings this action pursuant to various federal civil rights

statutes and state causes of action seeking monetary, declaratory, and injunctive relief for

alleged wrongs committed against him by Defendants when he refused to show his sales

receipt upon exiting a Best Buy store.  Defendants now move to dismiss the Amended

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, Defendants' motion to dismiss is granted in part and denied in part.

## I.  Background

On August 20, 2005, Plaintiff, who is African-American, purchased a Kodak camera and a bottle of water at the Best Buy store located at 1280 Lexington Avenue in Manhattan, New York.  As he exited the store, Best Buy employees Ricardo Quiles, Brian Placek, Brian Legister, and Carl Larsen asked to see his sales receipt.  Plaintiff asked the employees whether he was being accused of shoplifting.  When they told Plaintiff that he was not, Plaintiff allegedly responded, "Then there is no legal basis for you to demand inspection of my sales receipt and impede my forward progress."  Compl. ¶ 44.[1]  Plaintiff attempted to leave the store without showing his receipt and was allegedly "attacked" by Quiles, Placek, Legister, Larsen, and other unidentified Defendants.  Compl. ¶ 47.  Plaintiff alleges that as he "struggle[d] to get free from being pummeled by fist," Defendant Peter Troupas yelled, "Drag his black ass back in the store!" Compl. ¶ 47.

Plaintiff alleges that "while being punched," he "managed to free himself and dial 9-1-1."  Compl. ¶ 48.  Soon after, Police Officers Green and Morales, and other unidentified Defendants arrived.  After discussing the situation with the Best Buy employees, Officer Green asked to see Plaintiff's sales receipt.  Plaintiff initially refused, but then handed his receipt to Officer Green allegedly "under threat of incarceration."  Compl. ¶ 52.  Officer Green showed the receipt to the Best Buy Employees, and Plaintiff was then permitted to leave the store.  Plaintiff alleges that the conduct of all Defendants—Best Buy, Troupas, Quiles, Placek, Legister, and Larsen ("Best Buy

---

[1] All citations to "Compl." refer to the First Amended Verified Complaint, dated February 10, 2009.

Defendants"), as well as Police Officers Green and Morales, unnamed police officers, and the City of New York ("City Defendants")—was motivated by racial animus.[2]

The next day, Plaintiff alleges that he received medical treatment at Barnabas Hospital. Compl. ¶¶ 54, 60. In September 2005, Plaintiff filed a complaint against Officers Green and Morales for police misconduct with the City of New York's Civil Complaint Review Board ("CCRB"). On December 14, 2005, Plaintiff filed a complaint with the New York State Division of Human Rights (NYSDHR) regarding the events at Best Buy. On December 6, 2007, the NYSDHR dismissed the complaint for lack of jurisdiction.

## II. Standard of Review

On a motion to dismiss, a court reviewing a complaint will consider all material factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Lee v. Bankers Trust Co.*, 166 F.3d 540, 543 (2d Cir. 1999). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 93 (2d Cir. 2007) (internal quotation marks omitted). Ultimately, the plaintiff must allege "enough facts to state a claim to relief that is

---

[2] Within the past several years, Plaintiff has brought two other cases in federal court based on essentially identical allegations regarding receipt-checking policies at retail stores. *See Bishop v. Toys "R" Us-NY LLC,* 414 F. Supp. 2d 385 (S.D.N.Y. 2006) (granting defendants partial judgment on the pleadings); *Bishop v. Toys "R" Us-NY LLC*, No. 04 Civ. 9403 (PKC), 2009 WL 440434 (S.D.N.Y. Feb. 19, 2009) (granting defendants summary judgment and dismissing case), *aff'd*, 2010 WL 2803026 (2d Cir. July 19, 2010); *see also Bishop v. Henry Modell & Co.*, No. 08 Civ. 7541 (NRB), 2009 WL 3762119 (S.D.N.Y. Nov. 10, 2009) (granting defendants' motion to dismiss); *Bishop v. Henry Modell & Co.*, No. 08 Civ. 7541 (NRB), 2010 WL 1685958 (S.D.N.Y. Apr. 15, 2010) (denying Plaintiff's motion for reconsideration).

Though Plaintiff protests that the Court is prevented from relying on these cases by Federal Rule of Evidence 201, which governs judicial notice of adjudicative facts, "[t]his rule is irrelevant to our ability to review and adopt the legal reasoning of other courts." *Bishop v. Henry Modell & Co.*, 2009 WL 3762119, at *10 n.10.

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "[A] simple declaration that defendant's conduct violated the ultimate legal standard at issue . . . does not suffice." *Gregory v. Daly*, 243 F.3d 687, 692 (2d Cir. 2001). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). When reviewing a *pro se* complaint for failure to state a claim, a court is obligated to employ less rigorous standards than if the complaint was drafted by counsel. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam).

### III. Discussion

#### A. Plaintiff's Failure to Name the Correct Defendants in the Original Complaint and the First Amended Complaint

Plaintiff named "Best Buy, Co., Inc." and "(FICT) Best Buy Co. of Minnesota" in the Complaint. Best Buy contends that Best Buy Co. does not own, operate, or manage the store in question, which is owned and operated by Best Buy, L.P. While Plaintiff argues that the two Best Buy entities should be treated as a single entity under several theories, Plaintiff also seeks leave to amend the Complaint to add Best Buy, L.P. as a party. Best Buy counters that such an amendment would be futile because the limitations period has now run and the amendment would not relate back to the original filing date of the complaint.

"Where a complaint is amended to include an additional defendant after the statute of limitations has run, the amended complaint is not time-barred with respect to that defendant, and process may still issue, if it 'relates back' to a timely filed complaint."

*Sloane v. Town of Greenburgh*, No. 01 Civ. 11551 (MBM), 2005 WL 1837441, at *3 (S.D.N.Y. July 17, 2005).  Rule 15 provides that an amendment relates back to the date of the original pleading when the amended claim arises out of the same "conduct, transaction, or occurrence" set out in the original pleading, and the party to be brought in by amendment within the 120 day period for service of the original pleading "has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and . . .  knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party."  Fed. R. Civ. P. 15(c).

Hence, the failure to name the party in the original pleading must have been due to "a mistake concerning the identity of the proper party."[3]  *Id.*  Defendant Best Buy cites to case law from this Circuit holding that a mistake occurs only as a result of a "misnomer or misidentification."  *Barrow v. Wethersfield Police Dep't,* 66 F.3d 466, 469 (2d Cir. 1995).  This line of cases holds that a defendant has not made a "mistake" when he either (1) knew that he should have named the defendant in the original pleading but failed to do so, or (2) did not know the identity of the individual.  *See id.* at 470 ("[T]he failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake."); *Malesko v. Corr. Servs. Corp.,* 229 F.3d 374, 383 (2d Cir. 2000) ("A plaintiff is not considered to have made . . . a 'mistake,' however, if the plaintiff knew that he was required to name an individual as a defendant but did not do so because he did not know the individual's identity.").

---

[3] While New York's relation-back rule has been interpreted to be "arguably more lenient" than the federal provision, the state and federal rules "employ the same standard" when considering mistake.  *Sloane*, 2005 WL 1837441, at *3 (citing *Corcoran v. New York Power Auth.*, 935 F. Supp. 376, 393 (S.D.N.Y. 1996)).

However, the Supreme Court recently elaborated on the mistake requirement of Rule 15(c), and held that relation back "depends on what the party to be added knew or should have known, not on the amending party's knowledge." *Krupski v. Costa Crociere S.p.A.*, 130 S.Ct. 2485, 2490 (2010). The Court explained that "[a] prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose. But repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity." *Id.* at 2494. Accordingly, when the plaintiff meant to name the company that owned and operated a cruise line, but erroneously named "Costa Cruise Lines, N.V." instead of "Costa Crociere, S.p.A." in the original complaint, Costa Crociere should have known that the plaintiff failed to name it due to a mistake. Even though the plaintiff could have learned of the correct identity of the owner/operator by inspecting her cruise ticket, "the face of the complaint plainly indicated . . . a misunderstanding . . . ." *Id.* at 2497. Furthermore, Costa Crociere was unable to articulate any "strategy that it could reasonably have thought [the plaintiff] was pursuing in suing a defendant that was legally unable to provide relief." *Id.*

*Krupski*, which was decided after the instant motions were fully submitted, fully disposes of Best Buy's argument that Plaintiff did not make a mistake in naming "Best Buy, Co., Inc." and "(FICT) Best Buy Co. of Minnesota" instead of "Best Buy, L.P." because he knew or should have known the proper entity to sue. As in *Krupski*, Plaintiff's mistake was clearly indicated by "the face of the complaint" in that he plainly sought to sue the entity responsible for owning and managing the store at which the

alleged incident took place.  *Id.*  Furthermore, the interrelationship between the Best Buy entities and the similarity of these entities' names "heighten the expectation" that Best Buy should have understood Plaintiff's failure to name Best Buy, L.P. not as a fully informed strategic decision, but as a mistake.  *See id.* at 2498 ("This interrelationship and similarity heighten the expectation that Costa Crociere should suspect a mistake has been made when Costa Cruise is named in a complaint that actually describes Costa Crociere's activities.").[4]

*Krupski* also disposes of the individual Best Buy Defendants' contention that Plaintiff's amendment naming them as Defendants does not relate back to the filing date of the original complaint.  Plaintiff named various "John Doe" individual Best Buy Defendants in the original complaint, and amended the complaint to identify the individual Best Buy Defendants after the statute of limitations had run on most of Plaintiff's claims against them.  Under pre-*Krupski* authority in this Circuit, such an amendment would not have constituted a "mistake" if Plaintiff knew of these Defendants identities and failed to name them, or did not learn of their identities within the limitations period.  *See Barrow*, 66 F.3d at 469 ("John Doe" pleadings cannot be used to circumvent requirement to learn of Defendants' identities and name them in the complaint within the limitations period).  Best Buy contends that Plaintiff knew of the identities of the individual Best Buy Defendants when he filed the original complaint because Best Buy had disclosed their identities to Plaintiff in a New York State court action related to the alleged underlying incident in 2006, and Plaintiff alleges that he filed a criminal complaint against the store employees.

---

[4] Best Buy has not contested the fact that it had notice of the action within 120 days of the commencement of the action and that the claims asserted against it arise out of the same transaction or occurrence addressed in the original complaint.  Fed. R. Civ. P. 15(c).

Under *Krupski*, these arguments are unavailing; the "only question" is whether the individual Best Buy employees "knew or should have known that, absent some mistake, the action would have been brought" against them.  130 S.Ct. at 2494.  Here, the individual employees plainly had notice.  While the original complaint did not identify individual employees by their full names, it identified the positions held by each—Loss Prevention Manager, Store Director, Manager, and Security Guard—and the first name of Peter Troupas, who allegedly shouted a racial epithet at Plaintiff. Orig. Compl. ¶ 22. Moreover, Best Buy, L.P. and the individual Best Buy employees are all represented by the same attorney; the information in the original complaint provided more than enough information for counsel to identify the individual employees.  *Cf. Gleason v. McBride*, 869 F.2d 688, 693 (2d Cir. 1989) (to impute knowledge of pendency of lawsuit to defendants with same attorneys, "there must be some showing that the attorney(s) knew that the additional defendants would be added to the existing suit").

Accordingly, Plaintiff's failure to name the correct Defendants in his original complaint does not constitute grounds for dismissal.

**B.  Plaintiff's Claims under 42 U.S.C. §§ 1981, 1982**

**i.    Section 1981's "make and enforce contracts" Clause**

Section 1981(a) provides that, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of

every kind, and no other." 42 U.S.C. § 1981(a). To state a claim under Section 1981, Plaintiff must allege the following three elements: "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute . . . ." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993) (per curiam). Here, Plaintiff alleges that Defendant's discriminatory conduct concerned Plaintiff's right to make and enforce contracts. Compl. ¶¶ 113–14.

"[C]ourts that have addressed section 1981 claims in the context of retail transactions have held that after a purchase is completed, 'there is no continuing contractual relationship. Instead, the relationship is based on a single discrete transaction—the purchase of goods.'" *Bishop v. Toys "R" Us-NY LLC,* 414 F. Supp. 2d at 392–93 (quoting *Arguello v. Conoco, Inc.,* 330 F.3d 355, 360 (5th Cir. 2003) and collecting cases). As in the *Toys "R" Us* case, "[P]laintiff alleges that the detention and assault occurred only after he had completed his purchase . . . and was attempting to exit the store. Thus, the contractual relationship between [Plaintiff and Best Buy] had ended, and none of Defendants' actions interfered with his right to 'make' or 'enforce' that contract." *Id.* at 393; *see also Drayton v. Toys "R' Us Inc.*, 645 F. Supp. 2d 149, 158 (S.D.N.Y. 2009) (Make and enforce contracts clause claim "fail[s] as a matter of law because it is undisputed that each of the . . . Plaintiffs was alleged to have been stopped and asked to show their receipts after each Plaintiff had completed their purchase and were attempting to exit the store.")

Plaintiff cites *Perry v. Burger King Corp.,* 924 F. Supp. 548 (S.D.N.Y.1996), and *Joseph v. New York Yankees P'ship,* No. 00 Civ. 2275 (SHS), 2000 WL 1559019

(S.D.N.Y. Oct.19, 2000), to argue that the use of an exit at a retail establishment falls within the purview of the contractual relationship. However, "[i]n *Perry,* the plaintiff alleged that he was denied use of the bathroom at a Burger King on the basis of his race. . . . As the court noted, use of the bathroom at a restaurant could conceivably be held to fall within the purview of a contractual relationship premised on the purchase of food." *Bishop v. Henry Modell & Co.*, 2009 WL 3762119, at *11 (citing *Perry*, 924 F. Supp. at 552). We agree with Judge Buchwald that "the use of an exit at a retail store is [not] analogous" to the use of the bathroom in *Perry*, and Plaintiff's contractual relationship with Best Buy ended upon completion of his purchase. *Bishop v. Henry Modell & Co.*, 2009 WL 3762119, at *11. *Joseph*, in which an African-American plaintiff was denied entry into a restaurant because of its dress code, is similarly inapposite. In that case, "[t]he plaintiff's allegations did not concern any post-contract conduct," but rather concerned the "imposition of additional conditions prior to contract formation." *Id.*, citing *Joseph v. New York Yankees*, 2000 WL 1559019, at *3.

Accordingly, Plaintiff's claim under the "make and enforce contracts" clause is dismissed.

### ii.    42 U.S.C. § 1982

Section 1982 provides that, "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. "In retail cases alleging violations of both the contracts clause of section 1981 and section 1982, the two claims are often considered together, and the conclusion that plaintiff has not pled that he was denied the right to enter into a contract counsels in favor of dismissal

of the section 1982 claim." *Bishop v. Toys "R" Us-NY LLC,* 414 F. Supp. 2d at 395

(citing *Garrett v. Tandy Corp.,* 295 F.3d 94, 103 (1st Cir. 2002) ("[W]e are confident that

our reasoning vis-à-vis section 1981 (and, thus, our holding) applies with equal force to

any claim that the appellant might have under section 1982.  Simply put, the facts set

forth in the amended complaint fail to show a sufficient nexus between the alleged

discrimination and the appellant's purchase of goods (i.e., tangible personal property).")).

Plaintiff alleges that Defendant Best Buy's receipt verification policies impaired

his contractual right to purchase personal property from Best Buy.  Compl. ¶ 121.  But, as

discussed *supra,* Part B.II, his contractual relationship with Best Buy had already ended

when he was stopped to verify his receipt.  Therefore, none of Defendants' actions

interfered with his right to contract with Best Buy.  "Even interpreting [P]laintiff's

complaint liberally, he has failed to identify a cognizable interest in real or personal

property" so as to state a valid claim under § 1982.  *Id; see also, e.g.*, *Perry*, 924 F. Supp.

at 552 (no property interest in use of restaurant bathroom for purposes of § 1982).  As

such, Plaintiff's § 1982 claim is dismissed.

### iii.    Section 1981's "full and equal benefit" clause

To assert a claim under the "full and equal benefit" clause of Section 1981,

"[p]rospective plaintiffs must first prove a racial animus, not an easy task in itself; second

must identify a relevant law or proceeding for the 'security of persons and property'; and

finally must persuade a fact-finder or the court that defendants have deprived them of the

'full and equal benefit' of this law or proceeding."  *Phillip v. U. of Rochester*, 316 F.3d

291, 298 (2d Cir. 2003) (citing 42 U.S.C. § 1981(a)).  With his factual account of the

incident, Plaintiff sufficiently alleges the torts of assault and false imprisonment, and his

deprivation of the "full and equal benefit" of these laws "for the security of persons or property," to satisfy the second and third elements of this Section 1981 claim at the Rule 12(b)(6) stage.  Compl. ¶¶ 47, 98.

Plaintiff's complaint also offers sufficient facts to allege the first element of the "full and equal benefit" clause: racial animus.  "Section 1981 requires that a defendant's actions were both 'intentionally and purposefully discriminatory' and that these discriminatory actions were motivated by plaintiff's race or ethnicity."  *Poles v. Brooklyn Cmty. Housing and Servs.*, No. 10 Civ. 1733 (BMC) (LB), 2010 WL 1992544, at *3 (E.D.N.Y. May 14, 2010) (quoting *Reyes v. Erickson,* 238 F. Supp. 2d 632, 638 (S.D.N.Y. 2003)).  "[T]o survive a motion to dismiss, a plaintiff bringing a section 1981 claim must allege with specificity 'circumstances giving rise to a plausible inference of racially discriminatory intent.'"  *Johnson v. City of New York*, 669 F. Supp. 2d 444, 450 (S.D.N.Y. 2009) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994)).  An "inference of discrimination arises when [an] individual of one race [is] treated less favorably than those of another race who are similarly situated."  *Dowrich v. Aramark Healthcare Support Servs.*, No. 03 Civ. 2392, 2007 WL 2572122, at *8 (E.D.N.Y. Sept. 4, 2007).  "[N]aked assertions by plaintiffs that race was a motivating factor without a fact-specific allegation of a causal link between defendant's conduct and the plaintiff's race are too conclusory."  *Reyes,* 238 F. Supp. 2d at 638 (internal quotation marks and citations omitted).

Plaintiff's Complaint offers specific factual allegations which, if proven at trial, could substantiate his claim of discriminatory animus on the part of the Best Buy employees.  To assert differential treatment between himself and similarly situated non-

African-American customers, he affixes the following sentence to fifteen separate claims in the complaint: "Caucasian and non-African American customers were shopping in BEST BUY during this time, and were not treated with racial animus and in a similar racial [*sic*] discriminatory manner."  Compl. ¶¶ 44–47, 50–60.  By itself, this boilerplate "formulaic recitation of the elements of a constitutional discrimination claim" would not withstand a motion to dismiss, since Plaintiff fails to connect this assertion to the facts being alleged in each claim for relief.  *Iqbal*, 129 S.Ct. at 1951 (citation omitted).  However, Plaintiff also alleges that Defendant Troupas shouted, "Drag his black ass back in the store!" as the Best Buy employees tried to block Plaintiff's exit.[5]  Compl. ¶¶ 47, 99a.  Though Plaintiff has pleaded few facts that allege discriminatory intent, he has asserted more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," and has carried his burden at the 12(b)(6) stage.  *Iqbal*, 129 S.Ct. at 1949 (citation omitted).  Of course, "a full record and an adequately supported summary judgment motion may establish that the defendants' actions cannot be characterized as depriving [Plaintiff] of the equal benefit of proceedings for the security of persons and property." *Phillip v. U. of Rochester*, 316 F.3d at 298.

The Second Circuit has held that the doctrine of respondeat superior applies to Section 1981 claims. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1316 (1995) ("employer-

---

[5] Defendants urge the Court to take judicial notice of Plaintiff's Order to Show Cause filed in the New York State Supreme Court, Bronx County on January 10, 2006.  Def. Mem. Best Buy's Mot. D. at 5.  In that order, Plaintiff quoted Defendant Troupas (without identifying him by name) as having shouted, "Drag his ass back into the store!"  Def. Aff. Best Buy's Mot. D., Ex. E, ¶ 9.  The omission of the word "black" from the earlier court filing, Defendants argue, shows that he is fabricating his claim of racial discrimination.  However, the Second Circuit has held that at the Rule 12(b)(6) stage, a court may take judicial notice of a document filed in another court "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).  Moreover, judicial estoppel is not applicable to Plaintiff.  *See Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 120 (2d Cir. 2005) ("[J]udicial estoppel applies only when a tribunal in a prior separate proceeding has relied on a party's inconsistent factual representations and rendered a favorable decision" (citation omitted)).  Of course, the Court is free to take notice of Plaintiff's earlier filing in future proceedings.

entities and their agents can face unlimited civil liability under 42 U.S.C. § 1981 for discriminatory acts").  Under New York law, the doctrine "renders an employer vicariously liable for a tort committed by an employee while acting within the scope of his employment," but not "for torts committed by the employee for personal motives unrelated to the furtherance of the employer's business." *Id.* at 1317 (citing *Riviello v. Waldron*, 47 N.Y.2d 297, 302 (1979); *Heindel v. Bowery Sav. Bank*, 138 A.D.2d 787, 525, N.Y.S.2d 428, 428 (3d Dep't 1988)).  Here, Plaintiff has alleged facts sufficient to preserve a claim of liability against Defendant Best Buy under the respondeat superior doctrine.  He claims that Defendant Best Buy employees' attempt to check his receipt was part of "asset protection and sales receipt verification programs" instituted by Best Buy, and that Defendants Quiles and Larsen were specifically employed to address loss prevention.  Compl. ¶¶ 5, 31, 34, 78.  Defendants do not contest that these policies are part of the ordinary course of business, instead asserting that they are "enforced equally on all patrons exiting the Subject Store."  (Def. Mem. Best Buy's Mot. D. at 15.)  Since the individual Best Buy employees were acting within the scope of their employment, Plaintiff's Section 1981 claim against Best Buy may proceed.[6]

In bringing Section 1981 claims against Defendants Green and Morales, officers of the New York City Police Department, Plaintiff alleges that his "confinement and unreasonable seizure" amounted to a violation of his constitutional rights "under color of state law."  Compl. ¶¶ 49, 52, 57–58, 75–76.  As such, these claims constitute a civil action for deprivation of rights under color of law, which is properly pleaded under 42

---

[6] At this juncture the Court expresses no opinion on Plaintiff's allegations of Best Buy's direct Section 1981 violations, distinct from vicarious liability.  *See, e.g.*, Compl. ¶¶ 6-8, 75, 78, 81-86, 88, 98-99.

U.S.C. § 1983 and will be considered below.  *See Nevin v. Citibank, N.A.*, 107 F. Supp. 2d 333, 350 n.11 (S.D.N.Y. 2000).

Plaintiff has not plausibly pled his Section 1981 claims against the City of New York.  He asserts that the City has entered into a contractual agreement with Best Buy to place officers within its stores "through the Paid Detail Program or some other program," and has more generally created a "pattern or practice" of discrimination in cooperation with Best Buy.  Compl. ¶ 69, 78, 81, 85.  But he does not allege that Defendants Green and Morales were part of such a program.  Instead, he levels vague charges that the City knows "to a moral certainty" that police officers and private security personnel will act according to their "personal prejudices"; that it "has a pattern, practice and custom bias in policing and questioning citizens"; and that it has "not adequately monitored" the conduct of its officers.  Compl. ¶ 67, 76, 86.  These allegations amount to pure conjecture unsupported by any facts related to Plaintiff's case.  Plaintiff's claim that the City was a "policy and decisionmaker[], or provided input into . . . [Best Buy's] receipt checking policy" Compl. ¶ 92, is another "formulaic recitation of the elements of a constitutional discrimination claim" that does not withstand a motion to dismiss.  *Iqbal*, 129 S.Ct. at 1951.  Having failed to make out credible claims against the City, Plaintiff attempts to hold it liable for the actions of Defendants Morales and Green, Compl. ¶¶ 35-36, 72, but it is well settled that municipalities are not liable under Section 1981 on the basis of respondeat superior.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable solely because it employs a tortfeasor.").

Therefore, Defendants' motion to dismiss Plaintiff's claim under the "full and equal benefits" clause of § 1981 is granted with respect to the City Defendants and denied with respect to the Best Buy Defendants.

### C.  Plaintiff's claims under 42 U.S.C. § 1983

#### i.    State Action Requirement

"In order to state a claim under § 1983, a plaintiff must allege [i] that the challenged conduct was attributable at least in part to a person acting under color of state law, and [ii] that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Haley v. Pataki,* 106 F.3d 478, 482 (2d Cir. 1997).  "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" *Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 323 (2d Cir. 2002).

For conduct to constitute state action, there must be "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."  *Tancredi v. Metro. Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir. 2003), *cert. denied*, 539 U.S. 942 (2003) (citations and internal quotation marks omitted). Such a nexus is found "where the state exercises coercive power over, is entwined in [the] management or control of, or provides significant encouragement, either overt or covert to, a private actor, or where the private actor operates as a willful participant in joint activity with the State or its agents, is controlled by an agency of the State, has been

delegated a public function by the state or is entwined with governmental policies." *Id.* at 313 (citation and internal quotation marks omitted).

"Generally, the acts of private security guards, hired by a store, do not constitute state action under § 1983." *Guiducci v. Kohl's Dep't Stores,* 320 F. Supp. 2d 35, 37 (E.D.N.Y. 2004) (collecting cases); *see also Bishop v. Toys "R" Us NY-LLC,* 414 F. Supp. 2d at 396. Private security guards have been found to be state actors in two circumstances: "First, private guards may be sued when they are given the authority of state law. Second, security guards are considered to be acting under state law if they are willful participants in the joint activity of the State or its agents." *Guiducci*, 320 F. Supp. 2d at 37 (quoting *Josey v. Filene's, Inc.,* 187 F. Supp. 2d 9, 16 (D. Conn. 2002)).

Plaintiff claims that the Best Buy employees were "given the authority of state law," *Guiducci*, 320 F. Supp. 2d at 37, because the employees are "peace officers" or "special patrolmen." Pl.'s Mem. Opp. Best Buy's Mot. D. 44. While deputizing a security guard as a "special patrolman" under the New York City Administrative Code may render a security guard liable under Section 1983, *see Rojas v. Alexander's Dep't Store, Inc.,* 654 F. Supp. 856, 858 (E.D.N.Y. 1986), Plaintiff's allegation is wholly conclusory. He does not allege that the Best Buy Defendants were ever officially deputized by the New York City Police Department, and pleads no facts supporting such a claim. As such, the Court need not credit this allegation on a motion to dismiss. *See Twombly*, 550 U.S. at 570 (plaintiff must plead "enough facts to state a claim to relief that is plausible on its face"); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1953 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions." (citations omitted)).

Plaintiff also claims that the Best Buy Defendants were participants in a "joint activity of the State or its agents."  However, "'general allegations of cooperation' between private individuals and specific state agents do not make out a claim of action taken under color of state law."  *Puglisi v. Underhill Park Taxpayer Assoc.,* 947 F. Supp. 673, 706 (S.D.N.Y. 1996).  "A mere general understanding that security guards can call the police for assistance is insufficient to establish state action."  *Fletcher v. Wal-Mart Stores, Inc.,* No. 05 Civ. 1859 (WHP), 2006 WL 2521187, at *3 (S.D.N.Y. Aug. 28, 2006).  Even had the Best Buy Defendants called the police, instead of Plaintiff, that would have been insufficient to render them state actors.  *See Prowisor v. Bon-Ton, Inc.,* 426 F. Supp. 2d 165, 170 (S.D.N.Y. 2006) (store security officer's call to police does not constitute state action), *aff'd,* 232 Fed. Appx. 26 (2d Cir. 2007); *see also Valez v. City of N.Y.,* No. 08 Civ. 3875, 2008 WL 5329974, at *3 (S.D.N.Y. Dec. 16, 2008) ("[F]urnishing information to the police does not by itself make someone a joint participant in state action under Section 1983."); *Vazquez v. Combs,* No. 04 Civ. 4189, 2004 WL 2404224, at *4 (S.D.N.Y. Oct. 22, 2004) ("[M]erely filing a complaint with the police, reporting a crime, requesting criminal investigation of a person, or seeking a restraining order, even if the complaint or report is deliberately false, does not give rise to a claim against the complainant for a civil rights violation.").

Plaintiff alleges that Best Buy and the City of New York had entered into "a contractual agreement . . . through the Paid Detail Program or some other program" to assist in Best Buy's loss prevention program.  Compl. ¶ 69.  This vague allegation never identifies the supposed agreement or program at issue, and thus fails to state a plausible claim.  The Complaint does not allege that Defendants Morales and Green were working

18

in such a program, or that such a program was in effect at the Best Buy store where the incident took place. It only surmises that the officers "took the side of BEST BUY" because they were "predisposed and biased," a mere hypothesis with no supporting facts alleged in the Complaint.  Compl. ¶ 70.  In any event, Plaintiff's attempt to impute the actions of Defendants Morales and Green to the Best Buy Defendants, and endow the latter with state action, is refuted by the fact that Plaintiff, not the Best Buy Defendants, called the police.  Compl. ¶ 48.

Plaintiff's allegations do not demonstrate that the Best Buy Defendants and the City Defendants were engaged in a "joint activity" so that the actions of the Best Buy Defendants were "fairly attributable to the State." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 313 (2d Cir. 2003).  As such, the Section 1983 claims against the Best Buy Defendants are dismissed, and the analysis of Plaintiff's Section 1983 claims below concerns only the City Defendants.

### ii.   Fourth Amendment

"A § 1983 claim for false arrest under the Fourth Amendment is substantially the same as a claim for false arrest under New York law." *Bissinger v. City of New York*, Nos. 06 Civ. 2325–26 (WHP), 2007 WL 2826756, at *7-8 (S.D.N.Y. Sept. 24, 2007) (citing *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996)). "Under New York law, a plaintiff claiming false arrest must show, *inter alia,* that the defendant intentionally confined him without his consent and without justification." *Weyant*, 101 F.3d at 852. However, the existence of probable cause to arrest "is a complete defense to an action for false arrest." *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir. 1994); *see also, e.g.*, *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003) ("If probable cause existed,

[Defendant] as a police officer would be privileged to make an arrest."); *Smith v. Edwards*, 175 F.3d 99, 105 (2d Cir. 1999) ("It is well established that appellant's Section 1983 claims against appellees for false arrest and false imprisonment must fail if the appellee-officers had probable cause to arrest him.").

 "Probable cause exists when officers 'have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Russell v. Eighty Fourth Precinct*, No. 03 Civ. 6179, 2004 WL 2504646, at *3 (E.D.N.Y. Nov. 8, 2004) (quoting *Weyant,* 101 F.3d at 852). "Generally, when an officer is advised of a crime by a victim or an eyewitness, probable cause exists." *Russell*, 2004 WL 2504646, at *3 (citing *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000)). "[T]he best that can be said generally about the required knowledge component of probable cause for a law enforcement officer's evidence search is that it raise a 'fair probability,' . . . or a "substantial chance" . . . of discovering evidence of criminal activity." *Safford Unified Sch. Dist. v. Redding,* 129 S.Ct. 2633, 2639 (2009) (quoting *Illinois v. Gates,* 462 U.S. 213, 238 (1983)). "When information is received from a putative victim or an eyewitness," or when "a police officer was presented with different stories from an alleged victim and the arrestee," probable cause exists. *Curley v. Vill. of Suffern,* 268 F.3d 65, 70 (2d Cir. 2001) (citing *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)). "Probable cause is a 'fluid concept' that does not require 'absolute certainty.'" *United States v. Chao Xian Yao*, No. 05 Cr. 1114 (SAS), 2006 WL 1227771, at *1 (S.D.N.Y. May 3, 2006) (*quoting Gates,* 462 U.S. at 232; *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003)) (footnotes omitted).

Even assuming that Plaintiff could satisfy the other elements of a false arrest claim, Plaintiff has failed to allege facts showing that the Police Officer Defendants lacked probable cause to detain and question him.  According to the Complaint, Plaintiff was "attacked" by at least seven Best Buy employees, who "pummeled [him] by fist." Compl. ¶ 47.  During the attack, Plaintiff called 9-1-1, and the Police Officer Defendants arrived "[a] few seconds later."  Compl. ¶ 48.  The police were responding to a report of a group assault, and therefore had probable cause to question the individuals involved in the alleged assault.  *Curley*, 268 F.3d at 70.  Plaintiff's conclusory allegation that the officers' actions were "not based upon probable cause" does not suffice to plead this necessary element of his Fourth Amendment false arrest claim.  *See Twombly*, 550 U.S. at 555 (in complaint plaintiff must supply "more than labels and conclusions").

Plaintiff argues in his briefs that his Fourth Amendment claim is based upon the Police Officers' demand to inspect his sales receipt allegedly "under threat of incarceration," Compl. ¶ 52, and several of his proposed amendments to the Complaint are meant to clarify that the presentation of the sales receipt is connected to his Fourth Amendment claim.  (Pl.'s Reply Mem. Supp. Rule 15 Mot. 12.)  However, an unreasonable search and seizure claim based on the Officers' demands to examine Plaintiff's sales receipts also fails for failure to sufficiently allege a lack of probable cause.

Even viewing the facts Plaintiff alleges in the light most favorable to him, he has failed to sufficiently allege that the police did not possess an objectively reasonable belief that there was a "fair probability" of discovering evidence of a crime by demanding to inspect Plaintiff's sales receipt.  *Gates,* 462 U.S. at 238.  The fact that at least seven store

employees were so concerned about a shopper leaving the store without showing his

receipt that they would "pummel[] [him] by fist" to prevent him from leaving, Compl. ¶

47, would "warrant a man of reasonable caution in the belief that an offense has been or

is being committed . . . and that evidence bearing on that offense will be found in the

place to be searched." *Redding,* 129 S.Ct. at 2639 (citation omitted). Namely, an

objectively reasonable officer would be warranted in believing that a theft might have

occurred, and that Plaintiff's sales receipt would bear on that offense. That Plaintiff was

ultimately discovered not to have committed any wrongdoing upon inspection of the

receipt is of no moment; only a "fair probability" of discovering evidence of a crime is

required for probable cause, not "absolute certainty." *Chao Xian Yao*, 2006 WL

1227771, at *1 (citations omitted).

 Plaintiff's Fourth Amendment claims are dismissed.

### iii.  First Amendment

 In order to state a claim of First Amendment retaliation, "plaintiff must prove: (1)

he has an interest protected by the First Amendment; (2) defendants' actions were

motivated or substantially caused by his exercise of that right; and (3) defendants' actions

effectively chilled the exercise of his First Amendment right." *Curley v. Vill. of Suffern*,

268 F.3d 65, 73 (2d Cir. 2001). However, no First Amendment claim against the Police

Defendants lies for questioning Plaintiff because we have already determined that

probable cause existed even if Plaintiff was detained by the officers. "[I]f a police officer

has probable cause to arrest a person, this will serve as a complete defense to any claim

of First Amendment retaliation based on that arrest. *Morgan v. Cnty. of Nassau*, 2010

WL 2634125, at *7 (E.D.N.Y. 2010) (citing *Curley*, 268 F.3d at 73; *Singer v. Fulton County Sheriff*, 63 F.3d 110, 120 (2d Cir.1995)).

Plaintiff contends that his "First Amendment claims stem[] from the freedom of travel, wherein Defendants Green and Morales denied Bishop's freedom of movement." (Pl.'s Mem. Opp. City Def.'s Mot. D. 7) (*citing Spencer v. Casavilla*, 903 F.2d 171, 174 (2d Cir. 1990) ("[T]he Constitution . . . protects the right to travel freely within a single state.")). However, Plaintiff's attempt to ground this right in the First Amendment is misguided, see *King v. New Rochelle Mun. Hous. Auth.*, 442 F.2d 646, 648 (2d Cir. 1971) (right to intrastate travel not grounded in "a particular constitutional provision"), and we have already held that Defendants Green and Morales possessed probable cause to detain Plaintiff in the context of his Fourth Amendment claims. *Cf. supra* Part C.II. Accordingly, Plaintiff's First Amendment claims are dismissed.

### iv.   Thirteenth Amendment

The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const., amend. XIII, § 1.  "[I]n order to state a claim under the Thirteenth Amendment, a plaintiff must demonstrate he has been subjected to 'compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results.'"  *Ford v. Nassau Cnty. Executive*, 41 F. Supp. 2d 392, 400–401 (E.D.N.Y. 1999) (quoting *Butler v. Perry*, 240 U.S. 328, 332 (1916)).  "In evaluating claims under the Thirteenth Amendment, a court must take a 'contextual approach,' considering such factors as the nature and amount of work demanded, and the purpose for

which it is required." *Ford*, 41 F. Supp. 2d at 401 (*citing Immediato v. Rye Neck Sch. Dist.,* 73 F.3d 454, 459–460 (2d Cir. 1996)).

Plaintiff does not allege that he was forced to work.  Furthermore, Plaintiff's allegation that Defendants' conduct constituted the imposition of the "badges and incidents of slavery" is unavailing.  *See Alma Soc. Inc. v. Mellon*,  601 F.2d 1225, 1237 (2d Cir. 1979) ("The Court has never held that the [Thirteenth] Amendment itself, unaided by legislation[,] reaches the 'badges and incidents' of slavery as well as the actual conditions of slavery and involuntary servitude. . . . Indeed, all indications are to the contrary.").  Accordingly, Plaintiff's Thirteenth Amendment claim is dismissed as meritless.

> **v.     Fourteenth Amendment Equal Protection Claim**

To maintain an equal protection claim, Plaintiff must show "'adverse treatment of individuals compared with other similarly situated individuals [and that] such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 474 (2d Cir. 2008) (quoting *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir.2005) (alteration in original)). Well-pled facts showing "that the plaintiff has been treated differently from others similarly situated, remains an essential component of such a claim."  *Sweeney v. City of New York*, No. 03 Civ. 4410, 2004 WL 744198, at *5 (S.D.N.Y. Apr. 2, 2004). "Conclusory allegations of selective treatment are insufficient to state an equal protection claim."  *Jarrach v. Sanger*, No. 08 CV 2807 (SJF) (ARL), 2010 WL 2400110, at *8 (E.D.N.Y. June 9, 2010).

Plaintiff has failed "to allege or identify a single similarly situated [individual] who was treated differently" by the City Defendants. *Sweeney*, 2004 WL 744198, at *5. The Complaint does not allege facts indicating that any other person refused to show their receipt at Best Buy, or that any other person had any interaction with Police Officers related to Best Buy's receipt checking policy. Plaintiff's repeated allegation that "Caucasian and non-African American customers were shopping BEST BUY during this time, and were not assaulted, unlawfully imprisoned, subjected to an unreasonable seizure and search or treated with racial animus and in a similar racial [*sic*] discriminatory manner" is wholly conclusory. Compl. ¶ 48-49. Furthermore, customers whose receipts were allegedly not checked are not similarly situated to Plaintiff vis-à-vis his interaction with the police because neither they nor Best Buy would have summoned the police to the store due to the receipt-checking policy. Accordingly, Plaintiff's equal protection claim is dismissed.[7]

###### vi.    Fourteenth Amendment Due Process Claims

Because we have already found that probable cause existed to detain and question Plaintiff, Plaintiff cannot maintain a cause of action based on procedural or substantive due process regarding the Defendant Morales and Green's actions. *See United States v. McDermott,* 918 F.2d 319, 325 (2d Cir. 1990) ("Due process requires probable cause for an arrest, and when police officers acting in bad faith make an arrest without probable cause, the person arrested has suffered a deprivation of liberty without due process of

---

[7] In Plaintiff's Memorandum in Opposition to the City Defendants' Motion to Dismiss, he claims he is asserting a "class of one" equal protection claim not based on membership in a protected class. *See Willowbrook v. Olech*, 528 U.S. 562, 562 (2000). However, his claims under this theory would fail for the same reason. *See Ruston v. Town Board for the Town of Skaneateles*, 610 F.3d 55, 55 (2d Cir. 2010) ("However, the Rustons do not allege specific examples of the Town's proceedings, let alone applications that were made by persons similarly situated. The equal protection claim as to the Town defendants therefore fails for lack of factual allegations to support the legal conclusion.").

law."); *Carthew v. Cnty. of Suffolk*, 07 Civ. 4209 (JFB) (ETB), 2010 WL 1794618, at *9

n.12 (E.D.N.Y. May 6, 2010) ("[B]ecause Officer Vezzi had probable cause to arrest

plaintiff, any due process claim cannot survive . . . ."); *Harris v. Cnty. of Nassau*, 581 F.

Supp. 2d 351, 357 (E.D.N.Y. 2008) ("Where . . . probable cause has been clearly

established, there can be no claim for denial of either the procedural or substantive right

to due process."); *Little v. City of New York,* 487 F. Supp. 2d 426, 442–43 (S.D.N.Y.

2007) ("[N]o reasonable juror could conclude that [defendant] deprived plaintiff of his

liberty without due process because . . . [defendant] had probable cause for the arrest.");

*Clark v. Dowty,* No. 05 Civ. 1345 (WWE), 2007 WL 2022045, at *6 (D. Conn. Jul. 9,

2007) ("Because the Court has already found that probable cause existed for the arrest of

plaintiff, there was no violation of his substantive or procedural due process rights

regarding this claim.").

### vii.  Section 1983 Municipal Liability, Conspiracy Liability, and Supervisor Liability

Because Plaintiff has not adequately pled a cause of action against the Police

Officer Defendants under Section 1983, his claim for municipal liability fails.  "A

municipality cannot be liable for acts by its employees which are not constitutional

violations." *Martinez,* 2008 WL 2566565, at *4 (citing *City of Los Angeles v. Heller*, 475

U.S. 796, 798-99 (1986); *Curley v. Vill. of Suffern*, 268 F.3d 65, 71 (2d Cir. 2001)).  His

§ 1983 conspiracy and supervisor liability claims fail for the same reason.  *See Droz v.

McCadden*, 580 F.3d 106, 109 (2d Cir. 2009) ("Because neither of the underlying section

1983 causes of action can be established, the claim for conspiracy also fails."); *Blyden v.

Mancusi,* 186 F.3d 252, 265 (2d Cir. 1999) ("Of course, for a supervisor to be liable

under Section 1983, there must have been an underlying constitutional deprivation.").

### D.  Plaintiff's Claims under 42 U.S.C. § 1985

The Supreme Court has identified five broad categories of conspiratorial activity that are proscribed by Section 1985: (1) interference with federal officers, (2) interference with the administration of justice in federal court, (3) interference with the administration of justice in state courts, (4) interference with private enjoyment of equal protection of the law and equal privileges and immunities, and (5) interference with the right to support candidates in federal elections.  *Kush v. Rutledge,* 460 U.S. 719, 724 (1983).  Only the fourth category of conspiracy, dealing with the equal protection of the law, is potentially relevant to Plaintiff's claims.  *See, e.g.*, *Poles v. Brooklyn Cmty. Housing Servs.*, No. 10 Civ. 1733 (BMC) (LB), 2010 WL 1992544, at *2 (E.D.N.Y. May 14, 2010) (where plaintiff did not allege interference with federal officer, court proceedings, or federal elections, only the equal protection provision of § 1985, § 1985(3), is relevant).

"In order to state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must show: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.  A Section 1985(3) conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action."  *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007) (citation and internal quotation marks omitted).  "[T]he intended victims must be victims not because of any personal malice the conspirators have toward them, but

because of their membership in or affiliation with a particular class." *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 850 (1983).

Plaintiff contends that Defendants conspired to violate his Thirteenth Amendment rights to "freely travel" and be free from the badges and incidents of slavery. Compl. ¶¶ 182-83.  Having found no underlying Thirteenth Amendment violation for the reasons stated *supra*, Plaintiff's § 1985(3) claim must fail.  *See Friends of Falun Gong v. Pac. Cultural Enter.*, 288 F. Supp. 2d 273, 279 (E.D.N.Y. 2003) ("[T]o maintain a claim pursuant to § 1985(3), there must be some predicate constitutional right which the alleged conspiracy violates.").

Furthermore, to state a claim under Section 1985(3), Plaintiff must "provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."  *Webb v. Goord,* 340 F.3d 105, 110 (2d Cir. 2003) (quoting *Romer v. Morgenthau,* 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)).  *See Mass v. McClenahan*, 893 F. Supp. 225, 231 (S.D.N.Y.1995) ("[A] plaintiff must do more than make vague, general or conclusory accusations in order to establish the existence of a conspiracy actionable under § 1985(3)." (citation omitted)).   Plaintiff does not allege any facts indicating that such a meeting of the minds took place between the Defendant Best Buy employees and the Defendant New York City police officers. He only asserts in a wholly conclusory fashion that Defendants violated the statute "by entering into a conspiracy."  Compl. ¶ 182.)   His earlier allegations that Defendants Best Buy and the City of New York entered into an agreement to cooperatively police stores are insufficiently pleaded, *cf. supra* Part C.I, and therefore cannot substantiate his claim of a conspiracy.

Accordingly, Plaintiff's Section 1985 claim is dismissed.

### E.  Plaintiff's claims under 42 U.S.C. § 1986

Section 1986 creates a cause of action for neglecting to prevent conspiracies in violation of Section 1985.  Section 1986 provides that "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued."  42 U.S.C. § 1986.  "[A] claim [under § 1986] generally accrues once the plaintiff knows or has reason to know of the injury which is the basis of his action."  *Finkelman v. New York State Police*, No. 06 Civ. 8705 (JSR), 2008 WL 821833, at *3 (S.D.N.Y. Mar. 26, 2008).  In a case such as this one, when Plaintiff is allegedly subjected to a discrete incident and is immediately aware of the incident, the claim accrues on the date of the incident.  *See id.* at *4 ("The plaintiff's claim accrued on [the date of the alleged incident], when the alleged misconduct caused him harm and he knew or had reason to know of the wrongfulness of the conduct and the harm it caused."); *see also Powers v. Karen*, 768 F. Supp. 46, 50 (E.D.N.Y. 1991) (plaintiff's cause of action accrued on alleged date of civil rights violation).  As the complaint is deemed filed on August 20, 2008, approximately three years after the alleged incident at Best Buy, Plaintiff's claims under Section 1986 are time-barred.

### F.  Plaintiff's claims under 42 U.S.C. § 2000a

Section 2000a provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the

grounds of race." 42 U.S.C. § 2000a(a). A place of "public accommodation" is an establishment either affecting interstate commerce or supported by state action that falls into one of the following categories: "(1) a lodging for transient guests located within a building with more than five rooms for rent; (2) a facility principally engaged in selling food for consumption on the premises, including such facilities located within retail establishments and gasoline stations; (3) any place of exhibition or entertainment; (4) any establishment located within an establishment falling into one of the first three categories, and which holds itself out as serving patrons of that establishment; or (5) any establishment that contains a covered establishment, and which holds itself out as serving patrons of that covered establishment." *Bishop v. Henry Modell & Co.*, 2009 WL 3762119, at *12 (citing 42 U.S.C. § 2000a(b)). "The text of § 2000a does not explicitly include retail establishments, *see* 42 U.S.C. § 2000a(b), and case law confirms that retail stores are not places of public accommodation within the meaning of the provision." *Id.* (collecting cases). Because Best Buy is not a "place of public accommodation" for the purposes of § 2000a, Plaintiff's claim is dismissed.

### G. Plaintiff's State Law Claims

Since a federal claim against the Best Buy Defendants remains extant in this action, there is a basis for supplemental jurisdiction over Plaintiff's state law claims against the Best Buy Defendants. *See* 28 U.S.C. § 1367(a); *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). The Best Buy Defendants argue that Plaintiff's state law claims for false arrest (Claim 12), false imprisonment (Claim 13), battery (Claim 14), assault (Claim 15), intentional infliction of emotional distress (Claim 20),

and *prima facie* tort (Claim 23) are all time-barred.  However, Plaintiff has submitted

claims for equitable as well as monetary relief, and under New York law, equitable

claims are subject to a six-year statute of limitations.  *See* N.Y. C.P.L.R. § 213(2);

*Cooper v. Parsky*, 140 F.3d 433, 440–41 (2d Cir. 1988) (*citing Loengard v. Santa Fe

Industries*, 70 N.Y.2d 262, 266–67 (1987)).

      The motion to dismiss Plaintiff's state law claims is denied with respect to the

Best Buy Defendants, and granted with respect to the City Defendants.


### H.  Plaintiff's Remaining Motions

      Plaintiff has filed a cross-motion seeking leave to file a Second Amended

Complaint pursuant to Rule 15(a).  "Leave to amend a complaint is granted at the court's

discretion and 'shall be freely given when justice so requires.'" *Bishop v. Henry Modell

& Co.*, 2009 WL 3762119, at *11 (quoting Fed. R. Civ. P. 15(a)).  If the proposed

amendments are futile, and would not survive a motion to dismiss, courts will deny leave

to amend.  *Foman v. Davis,* 371 U.S. 178 (1962); *Ricciuti v. N.Y.C. Transit Auth.*, 941

F.2d 119, 123 (2d Cir. 1991).  Plaintiff's proposed amendments are exclusively in the

form of arguments; for example, Plaintiff would amend the Complaint to state that

"Paragraph 81 of the Complaint debunks the [Defendants' equal protection arguments],

as it does in fact claim that White customers were in fact similarly situated with

Plaintiff."  (Pl.'s Reply Mem. Supp. Mot. Amend 6.)  These additional arguments are not

factual allegations that would enable the Complaint to survive a motion to dismiss, and

are thus futile.

In the context of the § 1981 claim, Plaintiff contends that "[i]f the Court finds the Complaint lacking" or that "the proposed amendments do not suffice, the Court should permit Plaintiff to amend for a most [*sic*] definite statement."  (Pl.'s Reply Mem. Supp. Mot. Amend 5.)  However, since the motion to dismiss the § 1981 claim against the Best Buy Defendants is denied, *supra*, Plaintiff's motion is moot.  With respect to the City Defendants, Plaintiff would describe with more detail Defendants' "policy," pursuant to which he was allegedly "falsely imprisoned, assaulted and battered, wherein White customers are not treated in a like manner."  (Pl.'s Reply Mem. Supp. Mot. Amend 5.) Such allegations would not establish animus, sufficient factual allegations of which are necessary to survive a motion to dismiss.  These amendments are likewise futile. Accordingly, Plaintiff's motion for leave to amend the Complaint is denied.

Finally, on July 10, 2009, Plaintiff filed a cross-motion for an order to continue to permit affidavits to be obtained or depositions to be taken or discovery to be had under Rule 56(f).  This motion is now moot.

## I.   Conclusion

For the foregoing reasons, Defendants' motions to dismiss are granted except with respect to the cause of action alleged under 42 U.S.C. § 1981 and pendent state claims against the Best Buy Defendants, which are denied.  The parties are to advise the court in writing on or before December 1, 2010 as to their proposed schedule for further proceedings in this case.

SO ORDERED.

32

Dated: _Oct. 13_, 2010

     New York, NY

                                                        U.S.D.J.